**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| LISA CLARK | * | |
|     Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | |
| ANN VENEMAN, SECRETARY OF | * | NO: 3:04CV00275   SWW |
| THE DEPARTMENT OF | * | |
| AGRICULTURE OF THE UNITED | * | |
| STATES OF AMERICA | * | |
| | * | |
|     Defendant | * | |

**ORDER**

Plaintiff Lisa Clark ("Clark") brings this employment discrimination lawsuit pursuant to Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, claiming that her former employer, the United States Department of Agriculture ("USDA"), failed to renew her temporary employment appointment based on her gender and in retaliation for her connection to another employee's discrimination claim. Clark also alleges supplemental claims under the Arkansas Civil Rights Act. Before the Court are the USDA's motion for summary judgment (docket entry #8), Clark's response (docket entry #13), and the USDA's reply (docket entry #20). After careful consideration, and for the reasons that follow, summary judgment will be granted in favor of the USDA.

**I.**

The following facts are undisputed.[1]  In August 1999, Clark received an appointment to a

---

[1] Pursuant to Local Rule 56.1, a party moving for summary judgment must submit a "statement of the material facts as to which it contends there is no genuine issue to be tried" and the non-moving party must submit a "short and concise statement of the material facts as to

temporary position with the Grain Inspection, Packers and Stockyards Administration ("GIPSA"), a division of the USDA, at the GIPSA's office in Jonesboro, Arkansas. The Jonesboro office is suboffice of the GIPSA's field office located in Stuttgart, Arkansas. Bill Strickland serves as the supervisor of the Jonesboro office, and Clyde Steves, Strickland's supervisor, serves as the field officer of the Stuttgart office.

Clark was hired as a "temporary, intermittent" agricultural commodity aid. Her job duties included inspecting samples of grain and insuring that they complied with government standards. Docket entry #13, Ex. D, at 23. Clark's temporary appointment was limited to 1,040 hours, not to exceed one year, and it was classified "intermittent" because her work hours were irregular and scheduled on a "as needed" basis. *See* docket entry #9, Ex. 2, at 1. According to USDA policy, temporary, intermittent appointments are not automatically renewed, and renewal is at the agency's discretion.

In April 2000, Clark informed Strickland that she had accepted a full-time job with the Frito-Lay Company, to begin April 9, 2000. On April 10, 2000, Clark gave Strickland a note stating that she would be unavailable to work from April 9, 2000 through May 6, 2000, and that after May 6, 2000, she would be available to work for the USDA only on Mondays. Docket entry #9, Ex. 2, AH.B.

On April 11, 2000, Jackie Stevens, a male who worked at the GIPSA's Jonesboro office, submitted a letter, dated March 24, 2000, to the Equal Employment Opportunity Commission ("EEOC") office in Washington, D.C. Stevens' letter states as follows:

Dear Mr. Bass:

---

which it contends a genuine issue exists to be tried." Under the Local Rule, all material facts set forth in the statement filed by the moving party "shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."

> This letter is to inform you that I am starting an EEO complaint against my first line supervisor, Bill Strickland, for sexual harassment.
>
> On Monday March 20, 2000, I was assigned duty at Riceland/Parboiled with Lisa Clark, a part-time sampler Mr. Strickland had hired.  At about 11:00 in the morning, I called Mr. Strickland to let him know that Ms. Clark and I were not busy and that the mill would not be needing us for the rest of the day.  Mr. Strickland instructed me and Ms. Clark to come to the office.  I was to help Mike Clem grade through rice and milled rice.  Ms. Clark was to process rough samples and help with the sampling.  In the afternoon Mr. Strickland dispatched Ms. Clark to Gulf/Rice Harrisburg . . . . Ms. Clark had just left the office when Mr. Strickland came into the lab and tried to start a conversation with this sexist remark: "I believe this is the smartest thing I've done yet, hiring these two ugly samplers.  None of you guys want to stay with these two in those labs when the work is slow.  I could not have gotten any of you to come in like this if I had hired a good looking blond."  At that moment I asked Mr. Strickland not to say any more, that I did not want to hear this.  He then turned to Darren Harpole and repeated his remark again.  I told him again I did not want to hear any of this.  He repeated the same remark a third time and Mike Clem heard him.
>
> I am of the understanding that Mr. Strickland has attended a sensitivity training course.  Therefore I contend there is no excuse for his action in this matter and it should have never occurred.
>
> I contend that Mr. Strickland is to be held accountable for his action.
>
> EEO is the law.  All people are equal under the law.
>
> Respectfully,
>
> Jackie Stevens

Docket entry #8, Ex. 3, AH.C.

The EEOC processed Stevens' grievance in accordance with EEOC regulations, which require that the agency refrain from revealing the identity of an aggrieved employee except when authorized to do so by the employee or until the employee files a formal complaint.  *See* 29 C.F.R. § 1614.105.  Stevens did not authorize that the EEOC reveal his identity--in fact, he requested that his grievance remain anonymous.

In May 2000, the EEOC contacted Steves and requested that he counsel Strickland

regarding the USDA's policy prohibiting sexual harassment. Steves granted the EEOC's request and reminded Strickland of the agency's anti-harassment policy. An EEO counselor reported to Stevens that Strickland had been counseled, and Stevens stated that he did not wish to take additional action regarding his grievance.

Four part-time employees working in the Jonesboro office had temporary appointments that were set to expire in August or September of 2000. They included: Clark, appointment expiration date 8/15/00; Phillip Northcutt, appointment expiration date 9/21/00; Sandra Carr, appointment expiration date 9/21/00; and Charles Higgins, appointment expiration date 8/29/00. In August 2000, Strickland recommended to Steves that the temporary appointments of Clark, Carr, and Northcutt should not be renewed. Strickland also requested the addition of two career, intermittent positions in the Jonesboro office.

Steves adopted Strickland's recommendation that Clark's, Carr's, and Northcutt's temporary positions go unrenewed. Accordingly, Clark's appointment expired on August 15, 2000. Steves also granted Strickland's request for two additional career positions. Applicants for the positions included Clark, Carr, Northcutt, Higgins, and Lucretia Hall, an intermittent employee hired on May 15, 2000. A panel of four, including Strickland and Steves, reviewed the applications and selected Higgins, a male, and Hall, a female, to fill the career positions.

The first week of September 2000, Riceland Foods requested that the Jonesboro office supply inspection services for 600 truckloads of rice. To fill the unexpected need for additional inspectors, Strickland appointed two males to temporary, intermittent positions on September 13, 2000. Clark did not apply for the temporary positions that became available in September 2000.

On August 6, 2004, Clark commenced this lawsuit, alleging that the USDA discriminated against her on the basis of gender by failing to extend her temporary appointment in August

2000. Docket entry #1, ¶ 5. She also charges that the USDA retaliated against her based on Stevens' letter to the EEOC. *Id*.

**II.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II.**

Retaliation

To establish a prima facie case of retaliation, Clark must show (1) that she participated in a statutorily protected activity, (2) that the USDA took an adverse employment action against her, and (3) that a causal connection exists between the protected activity and the adverse

employment action. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). The USDA asserts the Clark cannot show that she participated in activity protected under Title VII. The Court agrees.

It is undisputed that Clark took no part in activity protected under Title VII.[2] In fact, she acknowledges that she learned about Stevens letter after her temporary appointment expired in August 2000. Docket entry #12, Ex. 4, Clark Dep. at 18.

Clark contends that Strickland retaliated against her because he *thought* that she filed the anonymous complaint, actually filed by Stevens. The purpose of Title VII's anti-retaliation

---

[2]In his letter to the EEOC, Stevens complains about statements Strickland made, which apparently offended Stevens. Nothing in the letter indicates that Stevens submitted his letter on Clark's behalf. Nonetheless, Clark claims that Stevens' letter to the EEOC was actually filed "on her behalf." Docket entry #16, ¶ 60. Clark cites a portion of Stevens' EEO hearing testimony in which he answers "yes" to the question, "Now, you personally filed a Complaint against Mr. Strickland on behalf of Ms. Clark. Correct?" Docket entry #15, Ex. D, at 75.

Clark's citation to only a portion of Steves' testimony is somewhat misleading. Later in his testimony, Stevens made clear that he submitted an EEO complaint on his own behalf. The pertinent testimony follows:

> Q. Why didn't you file a Complaint against Mr. Strickland on your own behalf?
> A. I'm sorry?
> Q. Why didn't you file a Complaint for yourself?
> A. I still didn't understand what you said.
> Q. I said why did you not file a Complaint on you, for yourself?
> A. It was for me.
> Q. But my understanding is you filed it for her.
> A. I filed it on my behalf because I didn't want to tolerate him doing that to those women.
> Q. So let me make sure I understand what you're staying. You did not file a Complaint, EEO Complaint on her behalf.
> A. It was an informal complaint.
> Q. On whose behalf?
> A. It's got my name on it.

Docket entry #15, Ex. D, at 78.

provision is to protect the employee who actually utilizes the Title VII process to protect her rights. *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999)(citing *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)(citation omitted). The Eighth Circuit has made clear that, in order to establish a prima facie case of retaliation, it is essential that a plaintiff show that she personally participated in activity protected under Title VII. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir. 1998). Even if Title VII's anti-retaliation provision encompassed situations where an employer mistakenly perceives that an employee has engaged in protected activity, Clark provides no evidence that Strickland thought that she filed the anonymous complaint.[3] The Court finds no genuine issues for trial regarding Clark's retaliation claim.

Discrimination

Clark shoulders the burden to show, with circumstantial or direct evidence, that the USDA's failure to renew her temporary appointment was motivated by gender discrimination. Because Clark presents no evidence that directly points to the presence of a discriminatory

---

[3]In Clark's statement of material facts in dispute, she states that Steves testified at an EEOC hearing that "the complaint [Stevens' April 2000 letter to the EEOC] appeared to be based on some kind of derogatory remarks to a woman [and] he could assume normally that it would have been one of the two women working out of the 20 men who filed the complaint." Docket entry #15. Clark has misrepresented Steves' actual testimony, which follows:

> Q. Mr. Steves, *if* the Complaint appeared to be based on some kind of derogatory remarks to a woman, and it appeared the Complaint was filed by a woman or the woman was the one who had been grieved, and you only had one or two women working out of 20 men, it would be pretty easy to narrow it down to who filed the Complaint, would it not? At least in some people's minds.
>
> A. I would assume that's correct.

Docket entry #13, Ex. D, at 100-200(emphasis added). Steves' answer pertains to the hypothetical circumstances posed by the question. Steves *did not* testify that he had knowledge of the contents of Steven's complaint or that it appeared to be based on derogatory remarks to a woman.

motive, the Court will analyze her discrimination claim under the three-stage order of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).

Under the *McDonnell Douglas* framework, Clark must first establish a prima facie case of gender discrimination. If she establishes a prima facie case, the USDA must articulate a legitimate, nondiscriminatory reason for failing to renew her temporary appointment. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996). Finally, the burden shifts back to Clark to show that the proffered reasons are pretextual and that her gender was the real reason for the nonrenewal of her appointment.

The USDA asserts that, even if Clark can establish a prima facie case of discrimination, she is unable to rebut its proffered reason for not renewing her appointment. The USDA asserts that it did not renew Clark's appointment because in August 2000, Strickland determined that three temporary, intermittent positions that were set to expire should not be renewed, and, instead, the USDA should add two career positions at the Jonesboro office. According to the declaration of Clyde Steves, "if the need for [labor] is expected to be recurring over a long period of time, the agency prefers that the position be filled by a career, intermittent appointment [rather than a temporary, intermittent appointment]." Docket entry #9, Ex. 1, at 3. Strickland states that he chose Clark for nonrenewal because her full-time employment limited her availability to work. *See* docket entry #9, Ex. 2, at 3; docket entry #20, Ex. 1, at 3.

Because the USDA has articulated nondiscriminatory reasons for Clark's nonrenewal, to survive summary judgment, Clark must (1) discredit the USDA's asserted reasons and (2) show that the circumstances permit a reasonable inference that her gender was the real reason for her nonrenewal. *Johnson v. AT & T Corp.*, 2005 WL 2138808, at *5 (8th Cir. Sept. 7, 2005)(citation omitted).

In an attempt to discredit the USDA's proffered reason, Clark points out that in the course of administrative proceedings concerning Clark's claims, Strickland and Steves filed affidavits stating that Clark's appointment was not renewed because they projected that the Jonesboro office would continue needing intermittent employees, and it would be best to hire career employees.[4]  Clark asserts that Steves' and Strickland's affidavit testimony is inconsistent with "subsequent sworn statements [in which] they allege that they were unaware that Plaintiff Clark wanted to renew her intermittent position because she failed to reapply and failed to communicate her desire to continue her employment . . . . " Docket entry #19, ¶4.

The USDA has never altered its stated reasons for not renewing Clark's appointment. Furthermore, neither Strickland nor Steves has testified that Clark's appointment went unrenewed because she failed to submit an application.  The USDA does, however, present evidence that it is the agency's policy that when an employee's temporary appointment expires without being renewed, the employee must submit a new application in order to be considered for a second temporary appointment.   Evidence of the policy is relevant because Clark was not considered for a second temporary appointment in September 2000, when Strickland hired two males for temporary appointments.

---

[4]The pertinent portion of Strickland's affidavit reads as follows:   "When determining what intermittent positions will be renewed we look at the office staffing levels in comparison to the projected workload.  When the workload indicates that we will continue using intermittent [employees] to supplement our staffing, we normally announce for career appointments. . . . [Clark's] position . . . was not renewed.  I sent an email to Mr. Steves on August 8, 2000, recommending that we announce for two career intermittent positions due to an ongoing need of intermittent staffing." Docket entry #19, Ex. 1.

The pertinent portion of Steves' affidavit states:  "[Clark] was not renewed for the intermittent position . . . because we felt that the Jonesboro suboffice was going to continue needing intermittent employees and that it would best be filled by career employee[s]."

Clark claims that she took a job with Frito-Lay because Stevens and Danny Harpole, another GIPSA employee, advised her that her hours were going to be cut and she should look for another job.[5] She also states that Stevens and Harpole "hinted that [Strickland] was mad at her because of the EEO complaint that was filed." Docket entry #13, at 5.

Stevens denies that he told Clark that Strickland would retaliate against her, and Harpole has no recollection that he told Clark her hours would be reduced or that she should look for another job. *See* docket entry #13, Ex. D., at 80, 164. Clark's claim that Stevens and Harpole "hinted" that Strickland was mad at her because of an EEOC complaint lacks credulity considering that Clark had no knowledge of Stevens' letter to the EEOC until her employment with the USDA ended.

Next, Clark argues that even though she informed Strickland that she could work Mondays only, she worked at Frito-Lay at night, and Strickland knew she was available to work for him during the day. To support her argument, Clark notes that she worked 7 hours on May 13, 2000 and 6 ½ hours on May 27, 2000, at Strickland's request. May 13, 2000 and May 27, 2000 fell on Saturdays. In his testimony before the EEOC, Strickland testified that Clark told him she would be able to work "some on weekends." Docket entry #13, Ex. D, at 211. Strickland testified that after Clark began working full time, there were "some weekend opportunities where some work came up where she was available. . . . There's not very much weekend work but occasionally there's some." *Id*. at 216. In sum, evidence that Clark worked for the USDA on two Saturdays fails to show that Strickland knew she was available to work

---

[5]Docket entry #13, Ex. D at 19-20, 47. Clark acknowledges that she never asked Strickland, the person who actually scheduled her hours, whether he intended to cut her hours. *Id*. at 47.

during the day, Tuesday through Friday.

Even if Clark could discredit the USDA's proffered reasons, she must also show that the circumstances permit an inference unlawful discrimination. In an effort to make such a showing, Clark presents evidence that Strickland once told a male employee, in Clark's presence, that his sandwich smelled like his girlfriend (referring to female genitalia). Additionally, Clark claims that Strickland stated that she and other female employees were ugly and that he needed to start hiring pretty employees.[6]

Clark presents no evidence linking Strickland's alleged comments to his decision not to extend her appointment. Evidence that Strickland made vulgar, rude statements, without more, is insufficient to establish that gender discrimination motivated his decision. *See Gartman v. Gencorp, Inc.*, 120 F.3d 127, 130 (8th Cir. 1997)(holding that statements by decisionmakers that have no relation to the decisional process fail to support an inference that illegitimate criterion motivated an employment decision).

Finally, Clark claims that Strickland accommodated and extended the appointments of male employees who had other jobs or circumstances that limited their availability to work. However, she provides no details regarding the positions, work schedules, or availability of male employees whose appointments were renewed. There is simply no evidence that Clark was similarly situated to male employees who received favorable treatment. *See Harvey v. Anheuser-*

---

[6]In Clark's brief in opposition to summary judgment, she suggests that the Court should analyze her claim according to precedent governing hostile work environment claims. *See* docket entry #13, at 24-29. However, in her pretrial information sheet she makes clear that she is not proceeding under a hostile environment theory, stating: "Plaintiff contends that although the hostile work environment is not a claim per se, it is evidence of a discriminatory sexual animus on the part of her supervisors." Docket entry #22, at 2.

*Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)(noting that instances of disparate treatment can support a claim of pretext, but the plaintiff has the burden of proving that she and employees who received favorable treatment were "similarly situated in all relevant respects").

Strickland made the decision to hire Clark, and nothing in the record indicates that he became averse to employing females during Clark's one-year appointment. *See Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173, 175 (8th Cir.1992) ("It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."). The Court concludes that Clark's evidence is insufficient, as a matter of law, to allow a reasonable factfinder to infer intentional discrimination based on gender.

<u>Arkansas Civil Rights Act</u>

The USDA asserts that Clark's discrimination and retaliation claims brought under the Arkansas Civil Rights Act are preempted under Title VII. The Court agrees. Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment. *Gergick v. Austin*, 997 F.2d 1237, 1239 (8th Cir. 1993) (quoting *Brown v. General Serv. Admin.*, 425 U.S. 820, 835 (1976)). The Eighth Circuit has held that "[w]hen the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim." *Mathis v. Henderson*, 243 F.3d 446, 451 (8th Cir. 2001)(citation omitted). Accordingly, Clark's claims brought pursuant to the Arkansas Civil Rights Act must be dismissed.

### III.

For the reasons stated, Defendant's motion for summary judgment (docket entry #8) is

GRANTED.  Pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE.

    IT IS SO ORDERED THIS 7TH  DAY OF NOVEMBER, 2005.

                                                   /s/Susan Webber Wright  
                                                   UNITED STATES DISTRICT JUDGE